IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JOHN T. MIDGETT, TRUSTEE OF THE
HARDCASTLE CHARITABLE REMAINED
ANNUITY TRUST U/A AUGUST 6, 2007,

    **Plaintiff,**

v.                                                   **CIVIL ACTION NO. 2:17-cv-663**

MAILE SUSAN HARDCASTLE.

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is Maile Susan Hardcastle's ("Defendant" or "Maile") August 3, 2018 Motion for Reconsideration regarding the Court's ruling on Defendant's Motions to Amend Answer and Amend Scheduling Order. ECF No. 24. John T. Midgett ("Trustee" or "Midgett") filed his memorandum in opposition, ECF No. 26, and Defendant replied. ECF No. 28.

For the reasons set forth below, Defendant's Motion for Reconsideration is **GRANTED IN PART AND DENIED IN PART**.

### I.    FACTUAL AND PROCEDURAL HISTORY

In early 2013 and late 2014, Captain William H. Hardcastle, Jr. ("Captain Hardcastle") and his wife Mary V.M. Hardcastle ("Mrs. Hardcastle," collectively "Decedents") passed away. ECF No. 1 at ¶ 13. Prior to their deaths, on August 6, 2007, Decedents established a Charitable Remainder Annuity Trust ("CRAT") valued at just over $4 million. *Id.* at ¶ 7; *see* ECF No. 1-1. The CRAT allows "payment of a fixed annuity amount equal to [five percent] of the fair market value of the initial trust corpus to be paid over a term certain of [twenty] years" to the survivor of the Decedents, and then to the non-charitable beneficiaries for the remaining years of the twenty-

1

year term. ECF No. 1 at ¶¶ 8–9. After the twenty years are up, the remaining value of the trust goes to the charitable beneficiaries. ECF No. 1-1 at 3. The annuity payments are valued at $203,448 annually. ECF No. 1 at ¶ 8. Defendant and her half-sister Mary Lee Hardcastle ("Mary Lee") were the two non-charitable beneficiaries. *Id.* at ¶ 9. The American Red Cross of Southeastern Virginia and the Judeo-Christian Outreach Shelter, Inc. were the two charitable beneficiaries. *Id.*

After her death, the executor of Mrs. Hardcastle's estate, Kevin B. Rack ("Rack"), filed an estate tax return stating that her interest in the contributed assets of the CRAT and the tax implications of how the CRAT was set up required an estate tax of $859,244. *Id.* at ¶ 14. On September 16, 2016, Mr. Rack demanded full reimbursement from Mr. Midgett plus six percent interest. *Id.* at ¶ 15. When Mr. Rack refused to accept that the Trustee did not owe him anything, the two men filed separate actions against each other. *Id.* at ¶¶ 16–18.

In preparing for the suits against Mr. Rack, the Trustee discovered that Captain Hardcastle had contributed 93% of the assets of the CRAT, while Mrs. Hardcastle only contributed 7%. *Id.* at ¶ 18. As result, in order for the CRAT to continue receiving tax benefits, Mr. Midgett amended the CRAT to require Maile and Mary Lee to pay any federal estate taxes or state death taxes for the CRAT, or else they could no longer receive the annuity payments. *Id.* at ¶¶ 19–20; *see* ECF No. 1-2. The amendment also applied retroactively, meaning that Maile and Mary Lee were liable for the $859,244 Mr. Rack paid to the federal government. *Id.* at 1. Mr. Midgett gave notice to the two women on September 22, 2017. ECF No. 1 at ¶¶ 21–22. Mary Lee accepted Mr. Midgett's amendment, but Defendant refused to pay anything. *Id.* at ¶ 23. As such, the Trustee has stopped sending annuity payments to Defendant, and due to the retroactive nature of the amendment, he also demands she refund all past annuity payments. *Id.*

In seeking to recover these previous annuity payments, the Trustee filed the instant action on December 27, 2017. *Id.* Defendant filed her answer on January 23, 2018. ECF No. 4. The Court issued a Scheduling Order on February 23, 2018. ECF No. 6. In May 2018, Mary Lee sought to intervene in the lawsuit. *See* ECF Nos. 7–10. The Court denied her motion to intervene on July 19, 2018. ECF No. 22.

Meanwhile, on February 15, 2018, Defendant filed an action against the Trustee in Virginia Beach Circuit Court. ECF No. 26 at 2; *see* ECF No. 13-2. In that state action, Maile asserted four claims against Mr. Midgett for allegedly violating his fiduciary duties. *Id.* at 15–21; *see* ECF No. 13 at 3–4. On March 9, 2018, the Trustee moved to stay the state proceedings because Defendant's claims were compulsory counterclaims in the federal lawsuit before this Court. ECF No. 13-3 at 2–5. A hearing was to be held on March 26, 2018. ECF No. 13 at 4. However, on April 2, 2018, the Chief Judge of the Virginia Beach Circuit Court ordered that all the judges in that court were disqualified from presiding over Defendant's state court action because Mr. Midgett "is a local attorney who practices regularly before this Court." ECF No. 13-4 at 2. That case remained on the Virginia Beach Circuit Court docket but stagnated because there was no judge to preside over it. ECF No. 13 at 5. The parties have since informed the Court that the state proceedings have been assigned to a senior state judge who, on August 28, 2018, granted the Trustee's motion to stay those proceedings in favor of the instant action.

With respect to the motion at hand, Defendant filed two motions at the beginning of June 2018. On June 1, 2018, Defendant moved to amend her answer to add four counterclaims that paralleled the five claims she raised in her state court action. ECF Nos. 12–13. On June 3, 2018, she moved to amend the scheduling order to allow the parties adequate time to draft responsive pleadings and conduct requisite discovery. ECF Nos. 14–15. The Trustee opposed both

3

motions. ECF Nos. 16, 18. Defendant filed her replies near the end of June 2018. ECF Nos. 19–20.

On July 19, 2018, in the same order denying Mary Lee's motion to intervene, the Court denied both of Defendant's motions. ECF No. 22. The Court found that Maile had raised compulsory counterclaims after she had already filed her responsive pleadings, but she could not amend her answer to include them because none of them fell within the exceptions of Federal Rule of Civil Procedure 13(a)(2). *Id.* at 18–20. The Court then denied Defendant's Motion to Amend Scheduling Order since without an amended complaint there was no longer good cause to change the schedule. *Id.* at 22.

On August 3, 2018, Defendant filed her instant Motion for Reconsideration as to her Motion to Amend Answer and Motion to Amend Scheduling Order. ECF No. 24–25. Defendant argues that the Court misapplied Rule 13, and she should be allowed to amend her answer to include the counterclaims. Defendant also requests in the alternative that the Court revise its July 19, 2018 Order to allow her to file an interlocutory appeal. ECF No. 25 at 15–16. The Trustee filed his opposition on August 16, 2018. ECF No. 26. Defendant replied on August 22, 2018. ECF No. 28.

## II. LEGAL STANDARD

### A. Motions for Reconsideration under Rule 54(b)

Under Federal Rule of Civil Procedure 54(b), an interlocutory order is subject to revision "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." The decision to modify an interlocutory ruling is within the sound discretion of the court. *See U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., L.L.C.*, 899 F.3d 236, 256 (4th Cir. 2018) (citing *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)). In other

words, "a district court retains the power to reconsider and modify its interlocutory judgments." *Id.* (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003)). The district judge may exercise the discretion to afford relief from interlocutory orders "as justice requires." *Cobell v. Jewell*, 802 F.3d 12, 25–26 (4th Cir. 2015). A district court may grant a motion for reconsideration under Rule 54(b): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice. *Robinson v. Wix Filtration Corp. L.L.C.*, 599 F.3d 403, 420 (4th Cir. 2010) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)); *see also Gordon v. ArmorGroup, N.A., Inc.*, No. 1:10-cv-002, 2010 WL 4272979, at *1 (E.D. Va. Oct. 19, 2010); *Moore v. United States*, No. 2:05-cv-244, 2006 WL 763656, at *1 (E.D. Va. Mar. 23, 2006) ("[S]uch motion should not be used to 'rehash' arguments previously presented or to submit evidence which should have been previously submitted.").

## B. Motions to Amend Answer under Rules 13 and 15

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading after the time limit specified in Rule 15(a)(1) "only with the opposing party's written consent or the court's leave." Rule 15(a)(2) further provides that "[t]he court should freely give leave when justice so requires." *Id.* The Fourth Circuit allows parties to liberally amend "in keeping with the spirit of [Rule] 15(a)." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Consistent with this policy, "compulsory counterclaims should be granted freely." *Barnes Grp, Inc. v. C&C Prods., Inc.*, 716 F.2d 1023, 1035 n.35 (4th Cir. 1983) (citing 3 J. Moore, MOORE'S FEDERAL PRACTICE ¶ 13.33, at 13-196 (2d ed. 1983)).

A compulsory counterclaim is a claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and does not require the addition of a

third party over whom the court lacks jurisdiction. Fed. R. Civ. P. 13(a)(1). To help determine if a counterclaim is compulsory, the Fourth Circuit considers whether (1) the counterclaim involves largely the same issues of fact and law as the original claim, (2) res judicata would bar subsequent suit on the counterclaim, absent this rule, (3) the counterclaim would be supported or refuted by substantially the same evidence as the original claim, and (4) there is some logical relationship between the counterclaim and the original claim. *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988) (citing *Sue & Sam Mfg. Co. v. B-L-S Constr. Co.*, 538 F.2d 1048, 1051–53 (4th Cir. 1976)). Generally, compulsory counterclaims must be raised in the pleadings or be forfeited. Fed. R. Civ. P. 13(a)(1).

Although a party should move to amend a pleading as soon as the need to do so becomes apparent, "delay alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999); *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987). Denial of leave to amend is justified if there is delay and (1) the amendment would prejudice the opposing party; (2) the movant has acted in bad faith; or (3) the amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

Ultimately, the decision of whether to grant leave to amend is left to the Court's discretion, but the Court must make its determination "based upon a balancing of the equities, including whether the non-moving party [would] be prejudiced, additional discovery [would] be required, and whether the court's docket [would] be strained." *Barnes*, 716 F.2d at 1035 n.35 (citing *Rohner, Gerig & Co. v. Capital City Bank*, 655 F.2d 571, 576 (5th Cir. 1981)); *see also Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 440 (4th Cir. 2011) (citation omitted). In determining the equities, the Court may consider whether the amending

party is engaged in forum shopping. *McCaulley v. Purdue Pharma., L.P.*, 172 F. Supp. 2d 803, 809 (W.D. Va. 2001) ("The court has discretion to deny the amendment upon consideration of all the equities, and a significant factor is whether the [party is] forum shopping."); *accord Woods v. AlliedBarton Sec. Servs. L.L.C.*, No. CCB-11-2831, 2012 WL 439694, at *2 (D. Md. Feb. 9, 2012); *Tye v. Costco Wholesale*, No. 2:05-cv-190, 2005 WL 1667597, at *3 (E.D. Va. June 14, 2005).

### C. Motion to Amend Scheduling Order under Rule 16

Federal Rule of Civil Procedure 16 provides that a Scheduling Order "may be modified only for good cause and with the judge's consent." In determining whether a movant has demonstrated good cause, a court must consider four factors: "[1] the 'danger of prejudice to the non-moving party, [2] the length of delay and its potential impact on judicial proceedings, [3] the reason for the delay, and [4] whether the movant acted in good faith.'" *Guerrero v. Deane*, No. 1:09-cv-1313, 2012 WL 3068767, at *2 (E.D. Va. Jul. 27, 2012) (quoting *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768-69 (D. Md. 2010)). This standard "emphasizes the diligence of the party seeking amendment," which is the most important consideration. *RTF Mgmt. Co. L.L.C. v. Powell*, 607 F. App'x 238, 242 (4th Cir. 2015). Good cause requires the movant to "show that the deadlines cannot reasonably be met despite the party's diligence." *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (internal quotation marks omitted).

Alternatively, deadlines set forth in a Rule 16(b) Scheduling Order may be extended pursuant to Federal Rule of Civil Procedure 6. Rule 6(b)(1)(A) provides in pertinent part that "the court may, for good cause," extend a deadline "with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires[.]" In this District,

"[a]ny requests for an extension of time relating to motions . . . in general, will be looked upon with disfavor." LOCAL CIV. R. 7(I).

### D. Motion to Certify for Interlocutory Appeal under 28 U.S.C. § 1292(b)

The Court may certify an order for appellate review when the order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The moving party "must demonstrate to the district court that he or she meets all three Section 1292(b) factors." *Virginia* ex rel. *Integra Rec., L.L.C. v. Countrywide Secs. Corp.*, No. 3:14-cv-706, 2015 WL 3540473, at *4 (E.D. Va. June 3, 2015) (citing *Cooke-Bates v. Bayer Corp.*, No. 3:10-cv-261, 2010 WL 4789838, at *2 (E.D. Va. Nov. 16, 2010)). A "substantial ground for difference of opinion" exists "if there is a 'novel and difficult issue of first impression,' or if there is a circuit split and the controlling circuit has not commented on the conflicting issue." *United States* ex rel. *A1 Procurement, L.L.C. v. Thermcor, Inc.*, 173 F. Supp. 3d 320, 323 (E.D. Va. 2016) (quoting *Cooke-Bates v. Bayer Corp.*, No. 3:10-cv-261, 2010 WL 4789838, at *2 (E.D. Va. Nov. 16, 2010)). Even meeting all three requirements does not strip the district court of its "unfettered discretion to decline to certify an interlocutory appeal." *Integra*, 2015 WL 3540473, at *4.

### III. DISCUSSION

#### A. Motion for Reconsideration

In denying Defendant's Motion to Amend Answer in its July 19, 2018 Order, the Court looked to the exceptions in Federal Rule of Civil Procedure 13(a)(2). ECF No. 22 at 19–20. However, Rule 13(a)(2) is not the sole authority on a party's ability to amend. That rule allows a defendant not to assert a compulsory counterclaim at the time of filing his/her pleadings if that

8

claim is already being litigated or was not ripe at the time of the pleading. *See* Fed. R Civ. P. 13(a)(2); *Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470 (9th Cir. 1960); *see, e.g., Christenson v. CitiMortgage, Inc.*, 255 F. Supp. 3d 1099, 1109 (D. Colo. 2017). However, a party may still amend to include a compulsory counterclaim if the Court gives leave in its discretion. *See* Fed. R. Civ. P. 15(a)(2); *see, e.g., SunTrust Banks, Inc. v. Robertson*, No. 2:09-cv-197, 2010 WL 11569431, at *2–*3.

The Court finds that the exceptions in Rule 13(a)(2) were inapplicable to Defendant's Motion to Amend Answer. As such, the Court now reconsiders Defendant's Motion to Amend Answer and Motion to Amend Scheduling Order in turn.

### B. Motion to Amend Answer

As a preliminary matter, the counterclaims clearly fall within the Rule 13(a)(1) definition of compulsory counterclaims. They arise out of the same occurrence that is the subject of the Trustee's claim, namely, Amendment 1 to the CRAT and Defendant's refusal to pay tax liability in response to the Trustee demand. The counterclaims do not require the addition of any third parties. Further, they share some issues of fact and law as the original claim; they rely on much of the same evidence as the original claim; and there is a logical relationship between Defendant's claims of breach of trust and the Trustee claims in the Complaint. *See Painter*, 863 F.2d at 331 (citing *Sue & Sam Mfg. Co. v. B-L-S Constr. Co.*, 538 F.2d 1048, 1051–53 (4th Cir. 1976)). Because Defendant's counterclaims conform to the definition in Rule 13(a)(1) and the factors considered by the Fourth Circuit, the Court finds that Defendant's claims are compulsory counterclaims.

Nearly five months (now eight months) after her January 23, 2018 Answer, Defendant wishes to amend it to add these four counterclaims. ECF Nos. 4, 12–13, 24–25. Notably,

Defendant fully admits that she originally brought these claims in Virginia state court on February 15, 2018, just three weeks after filing her answer. ECF No. 13 at 3–5; *see* ECF No. 13-2. The reason she wishes to amend her answer in this action is because the proceedings in her state court action have stalled since the court-wide recusal order on April 2, 2018 and the stay on August 28, 2018. ECF No. 13 at 4–5 ("In light of this difficulty in obtaining a swift ruling in Virginia Beach, Maile is willing to have her claims raised in state court heard in this action."). At the hearing, Defendant provided no reason she brought her claims in state court as opposed to this Court beyond that she thought it was a more "appropriate" forum.

The proposed amended answer reflects Maile's desire to bring her state action into this Court. The counterclaims for breach of trust largely conform to the claims in the state complaint. *Compare* ECF No. 13-1 at 20–25 *with* ECF No. 13-2 at 15–21. The prayers for relief are also nearly identical, with the federal version inserting two additional requests for relief. *Compare* ECF No. 13-1 at 25 *with* ECF No. 13-2 at 21–22.

A liberal amendment policy, especially for compulsory claims, does allow parties to amend their pleadings months or even years after their initial filing. *Scott v. Family Dollar Stores*, 733 F.3d 105, 117–19 (4th Cir. 2013); *Sciolino v. City of Newport News*, 480 F.3d 642, 651 (4th Cir. 2007); *Laber*, 438 F.3d at 428–29; *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 420–22 (4th Cir. 1990); *Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214, 220–21 (5th Cir. 1975); *SunTrust Banks*, 2010 WL 11569431, at *2–*3; *Chelsea House N. Apartments, L.L.C. v. Blonder*, 223 F.R.D. 388, 391–92 (D. Md. 2004); *Bigda v. Fischbach Corp.*, 849 F. Supp. 895, 906–07 (S.D.N.Y. 1994). However, courts do not always grant a leave to amend as a matter of course and will deny leave on the basis of bad faith or prejudice. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379–80 (4th Cir. 2012); *Equal Rights Ctr. v. Niles*

*Bolton Assocs.*, 602 F.3d 597, 602–04 (4th Cir. 2010); *Essential Hous. Mgmt, Inc. v. Walker*, 166 F.3d 332, *3–*5 (4th Cir. 1998) (unpublished table decision); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 940–41 (4th Cir. 1995); *Barnes*, 716 F.2d at 1035 n.35; *Deasy*, 833 F.2d at 41–42; *Hately v. Torrenzano*, No. 1:16-cv-1143, 2017 WL 1428712, at *3–*4 (E.D. Va. Apr. 20, 2017).

Defendant did indeed bring her counterclaims in a relatively timely manner. She just did so in a different jurisdiction. Defendant clearly knew about her counterclaims if not on January 23, 2018 when she filed her Answer, then at least by February 15, 2018 when she filed her state court complaint. Yet, instead of choosing to bring these claims before this Court, Defendant made a strategic decision to go through state court, believing it was the more "appropriate" forum. The Court need not grant a motion to amend that arose during discovery, now just weeks before trial, based on Defendant's own tactical choices of forum. *See Mayfield*, 674 F.3d at 379 ("[T]here was no new evidence that could not have been discovered previously. Thus, [the plaintiffs] ha[d] no excuse for failing to include these additional allegations and causes of action in their original complaint."); *cf. SIL-FIO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518–19 (10th Cir. 1990) (affirming denial of leave to amend for a compulsory counterclaim after defendant had already tried to raise this issue in prior state court action). Defendant only sought to bring her claims before this Court after it became clear she would not receive relief in a timely manner. Defendant's conduct here amounts to nothing more than forum shopping. She should not be rewarded for her bad faith attempts to avoid the rightful jurisdiction of this Court. *See, e.g., McCaulley*, 172 F. Supp. 2d at 809 ("The court has discretion to deny the amendment upon consideration of all the equities, and a significant factor is whether the plaintiffs are forum

shopping."). Therefore, the Court finds that the Defendant acted in bad faith by bringing her claims in state court, in essence forum shopping, in order to circumvent this Court's jurisdiction.

As to prejudice, Defendant argues that her counterclaims will not prejudice the Trustee because any issues can be resolved by extending the discovery deadlines and revising the scheduling order, hence the Motion to Amend Scheduling Order. *See* ECF No. 28 at 14–15. Indeed, Defendant's counterclaims arise from the same operative facts as the Trustee's complaint, which is why they are compulsory. Moreover, Defendant's original Answer already raised the issue of fiduciary duties as an affirmative defense. ECF No. 4 at 5.

However, at the hearing, the Court asked the parties about the extent of discovery regarding breach of fiduciary duties. Both parties informed the Court that if the counterclaims became a part of the action, they would each procure an expert as to what Mr. Midgett's fiduciary duties were. In fact, the parties exchanged minimal discovery on the issue of fiduciary duties. Defendant only asked about fiduciary duties in her deposition of Mr. Midgett. The Trustee stated that in order to conserve the CRAT's resources, they have not produced discovery on the issue of fiduciary duties. To allow Defendant to add her counterclaims would prejudice the Trustee because the Court would have to reopen discovery and require the Trustee to increase his discovery costs at a time so late in the litigation.

Moreover, Defendant's counterclaims change the nature of the litigation. While she raised an affirmative defense regarding fiduciary duties, that defense alleges that Mr. Midgett violated his fiduciary duty when he amended the CRAT. ECF No. 4 at 5. Defendant's counterclaims go beyond the scope of Mr. Midgett's amendment and assert various bases for breach of fiduciary duties. ECF No. 13-1 at 20–25. Rather than a dispute about whether Mr. Midgett had the authority to amend the CRAT and if such an amendment was valid, Defendant's

counterclaims would turn this action into an indictment as to Mr. Midgett's performance as trustee of the CRAT. The Court will not allow Defendant to add these counterclaims and alter the face of this litigation so late in the game.

The Court finds that Defendant's Motion to Amend Answer is made in bad faith and would prejudice the Trustee and therefore denies Defendant leave to amend.

## C. Motion to Amend Scheduling Order

Because the Court still denies Defendant's Motion to Amend Answer, it also finds that Defendant has failed to show the "good cause" required to modify the Rule 16(b) Scheduling Order under either Rule 16(b) or Rule 6. The "cause" that Defendant asserted in its original motion is the need to dispose of Mary Lee's Motion to Intervene, which this Court has already decided, and Defendant's Motion to Amend Answer, which the Court has denied yet again. *See* ECF No. 15 at 6. The parties are just weeks from a resolution in this case, either through cross motions for summary judgment or through trial. The Court finds that Defendant has not demonstrated good cause and denies the Motion to Amend Scheduling Order.

## D. Motion to Certify for Interlocutory Appeal

Defendants also request that the Court revise its July 19, 2018 Order to certify the Motions to Amend and Motion to Amend Scheduling Order for interlocutory appeal. ECF No. 25 at 15–16. However, Defendants cannot satisfy the § 1292(b) factors. Amending a pleading under Rules 13 and 15 is not a "substantial ground for difference of opinion." The Federal Rules of Civil Procedure are clear and the caselaw is well-founded. This is not "a 'novel and difficult issue of first impression,'" nor is there a circuit split on the issue. *A1 Procurement*, 173 F. Supp. 3d at 323 (quoting *Cooke-Bates v. Bayer Corp.*, No. 3:10-cv-261, 2010 WL 4789838, at *2 (E.D. Va. Nov. 16, 2010)). Given the Court's "unfettered discretion to decline to certify an

13

interlocutory appeal," the Court finds that it would impede the efficiency of this case to stay proceedings to certify a relatively simple question of law. *Integra*, 2015 WL 3540473, at *4. Therefore, the Court denies Defendant's Motion to Certify for Interlocutory Appeal.

## IV. CONCLUSION

Based on the foregoing reasons, Defendant's Motion for Reconsideration is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** to the extent that the Court has reconsidered its July 19, 2018 Order on the Motion to Amend Answer and Motion to Amend Scheduling Order. The Motion is **DENIED** to the extent that the Defendant's Motion to Amend Answer is now **DENIED** based solely on the Court's analysis under Rule 15 and Defendant's Motion to Amend Scheduling Order is **DENIED**. The Motion to request a certification for interlocutory appeal is **DENIED**. The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

/s/
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
October 3, 2018